20-2056-cv
*Hassoun v. Searls*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

AUGUST TERM 2019
No. 20-2056-cv

**ADHAM AMIN HASSOUN,**
*Petitioner-Appellee,*

v.

**JEFFREY SEARLS, IN HIS OFFICIAL CAPACITY AS ACTING ASSISTANT
FIELD OFFICE DIRECTOR AND ADMINISTRATOR OF THE BUFFALO
FEDERAL DETENTION FACILITY,**
*Respondent-Appellant.*

On Appeal from the United States District Court
for the Western District of New York

SUBMITTED: JULY 14, 2020
DECIDED: JULY 30, 2020

Before:     CABRANES, SULLIVAN, and MENASHI, *Circuit Judges*.

The government moved to stay the release of Adham Amin Hassoun pending its appeal of the order granting his release. The U.S. District Court for the Western District of New York (Wolford, J.) decided that the government was not authorized under 8 C.F.R.

§ 241.14(d) to continue holding Hassoun in immigration detention pending his removal from the United States and ordered the government to release him. Although 8 C.F.R. § 241.14(d) permits the government to detain removable aliens on account of security or terrorism concerns, the district court held that the regulation does not authorize Hassoun's continued detention because it is inconsistent with its authorizing statute, 8 U.S.C. § 1231(a)(6), and because it provides inadequate procedural due process. The government appealed and argued that 8 C.F.R. § 241.14(d) is not inconsistent with § 1231(a)(6) and that it provides adequate procedural due process. Because the government made a strong showing that it was likely to succeed on the merits and that it would suffer irreparable harm absent a stay, we granted the government's motion for a stay pending appeal by an order issued July 16, 2020.

---

Jonathan Hafetz (Brett Max Kaufman, Charles Hogle, Judy Rabinovitz, Celso Perez, *for* the American Civil Liberties Union Foundation, New York, NY; A. Nicole Hallett, Supervising Attorney; Jessica Lewis, Stephen Ferro, Rule 46.1(e) Law Students, *for* the Mandel Legal Aid Clinic, University of Chicago Law School, Chicago, IL; Jonathan Manes, *for* the Roderick & Solange MacArthur Justice Center, Chicago, IL, *on the brief*), *for* Petitioner-Appellee.

Anthony D. Bianco, Senior Counsel for National Security (Ethan P. Davis, Acting Assistant Attorney General; William C. Peachey, Director; Kathleen A. Connolly, Deputy Chief; Steven A. Platt, John J.W. Inkeles, Counsel for National Security, *for* the Office of Immigration Litigation, United States Department of Justice,

2

Washington, DC; Daniel B. Moar, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, NY, *on the brief*), *for Respondent-Appellant*.

MENASHI, *Circuit Judge*:

Adham Amin Hassoun was held in immigration detention at the Buffalo Federal Detention Facility (BFDF) from October 10, 2017, until July 21, 2020, pending his removal from the United States.[1] He is a stateless alien who was ordered removed in 2003 for violating the terms of his non-immigrant visa. From 2004 until 2017, he served a term of imprisonment for committing three terrorism-related offenses. After Hassoun was released from imprisonment, "he was again detained by immigration authorities on his original order of removal." *Hassoun v. Sessions (Hassoun I)*, No. 18-CV-586 (FPG), 2019 WL 78984, at *1 (W.D.N.Y. Jan. 2, 2019).

Because an alien typically must be removed within ninety days of a final order of removal or be released under supervision, 8 U.S.C. § 1231(a)(1), the government invoked several authorities to justify Hassoun's continued detention: 8 U.S.C. § 1231(a)(6), 8 C.F.R. § 241.14(d) (a regulation promulgated pursuant to § 1231(a)(6)), and 8 U.S.C. § 1226a (the "Patriot Act"). Section 1231(a)(6) allows the government to detain an alien, such as Hassoun, who is inadmissible, removable, or "has been determined … to be a risk to the community

---

[1] After our decision on the government's motion to stay his release, the government informed the court that it removed Hassoun from the United States. For the purpose of explaining our decision on the government's motion, we rely on the facts before us at the time of that decision.

or unlikely to comply with [an] order of removal." On January 2, 2019, the U.S. District Court for the Western District of New York concluded that § 1231(a)(6) did not authorize Hassoun's continued detention on account of his deportable status for violating the terms of his non-immigrant visa because there was no significant likelihood that he would be removed in the reasonably foreseeable future. *Hassoun I*, 2019 WL 78984, at *3 (applying the framework of *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)). The government did not appeal that decision.

The other two authorities, 8 C.F.R. § 241.14(d) and 8 U.S.C. § 1226a, allow the government to detain aliens who are inadmissible or removable for, or suspected of, terrorism or endangering the national security. On June 29, 2020, the district court held that neither 8 C.F.R. § 241.14(d) nor 8 U.S.C. § 1226a authorized the government's continued detention of Hassoun and ordered the government to release him. *Hassoun v. Searls (Hassoun IV)*, No. 19-CV-370 (EAW), 2020 WL 3496302, at *1 (W.D.N.Y. June 29, 2020). The government appealed the district court's 8 C.F.R. § 241.14(d) decision to this court and its 8 U.S.C. § 1226a decision to the U.S. Court of Appeals for the D.C. Circuit, as required by § 1226a(b)(3).

The government moved in both courts for a stay pending appeal to prevent Hassoun's immediate release. We granted the government's motion by an order issued July 16, 2020, which noted that an opinion would be forthcoming. We explain the reasons for that ruling, concluding that the government made a strong showing that it was likely to succeed on the merits and that it would suffer irreparable harm absent a stay.

4

# BACKGROUND

Hassoun was born in Lebanon in 1962 to Palestinian refugee parents. He was admitted to the United States in 1989 on a non-immigrant visa and was subsequently detained, placed in removal proceedings, and ordered removed for failing to comply with the conditions of his visa. Before he could be removed, Hassoun was taken into custody on federal criminal charges.

The government charged that between October 1993 and November 2001, Hassoun participated in a conspiracy to murder, kidnap, and maim persons overseas; conspired to provide material support to terrorists; and provided material support to terrorists. At trial, "the government presented evidence that [Hassoun and his co-defendants] formed a support cell linked to radical Islamists worldwide and conspired to send money, recruits, and equipment overseas to groups that [they] knew used violence in their efforts to establish Islamic states." *United States v. Jayyousi*, 657 F.3d 1085, 1104 (11th Cir. 2011). A jury in the Southern District of Florida found Hassoun guilty on all three counts and the district court sentenced him to 188 months in prison. "[I]n finding [Hassoun] guilty, the jury rejected [his defense] that [he was] only providing nonviolent aid to Muslim communities." *Id*. at 1115.

After Hassoun completed his criminal sentence in October 2017, he was transferred to immigration detention under 8 U.S.C. § 1231(a)(6), which allows for the continued detention of an alien subject to a final order of removal who is inadmissible, removable for certain reasons, or is "a risk to the community or unlikely to comply with the order of removal." Subsequently, he was detained at the BFDF in the custody of the Department of Homeland Security (DHS).

DHS made requests to Lebanon, the Palestinian Territories, Egypt, Iraq, Somalia, Sweden, and the United Arab Emirates but had not at the time of the government's motion been able to obtain travel documents to remove Hassoun.

In May 2018, Hassoun filed a petition for a writ of habeas corpus, challenging his continued detention under 8 U.S.C. § 1231(a)(6). On January 2, 2019, the district court concluded that Hassoun's "continued detention [was] … no longer authorized under § 1231(a)(6)" because it could not "conclude that there [was] a significant likelihood of [Hassoun's] removal in the reasonably foreseeable future." *Hassoun I*, 2019 WL 78984, at *6. The district court delayed Hassoun's release, in part, to allow "immigration authorities … to determine whether [he] may be detained on some basis other than his compliance with his nonimmigrant status." *Id*. at *7.

On February 22, 2019, DHS notified Hassoun of its intent to continue his detention pursuant to 8 C.F.R. § 241.14(d). That regulation permits the detention of an alien who is inadmissible or removable for, or suspected of, among other things, terrorist activities, whose "release presents a significant threat to the national security or a significant risk of terrorism," and for whom "[n]o conditions of release can reasonably be expected to avoid the threat to the national security or the risk of terrorism." Other provisions of the same regulation also permit the detention of "[a]liens with a highly contagious disease that is a threat to public safety," "[a]liens detained on account of serious adverse foreign policy consequences of release," and aliens whose release would "pose a special danger to the public." 8 C.F.R. § 241.14(b)-(c), (f).

6

DHS based its invocation of 8 C.F.R. § 241.14(d) on Hassoun's "role in a conspiracy recruiting fighters and providing material support to terrorist groups overseas engaging in 'jihads' in Chechnya, Bosnia, Kosovo, Algeria, Afghanistan, Pakistan, Somalia, Eritrea, and Libya." Notice of Intent & Factual Basis to Continue Detention, Am. Verified Pet., Ex. D, *Hassoun IV*, 2020 WL 3496302 (No. 19-CV-370), ECF No. 13-4. On March 15, 2019, Hassoun filed a new petition for a writ of habeas corpus, challenging his detention under 8 C.F.R. § 241.14(d).

Five months later, the government certified Hassoun for continued detention under 8 C.F.R. § 241.14(d) but also, for the first time, asserted authority to detain him under 8 U.S.C. § 1226a as well. Section 1226a is a provision of the Patriot Act that permits the government to detain an alien whom the Attorney General has reasonable grounds to believe "is engaged in … activity that endangers the national security" or is removable or deportable for terrorist activities. After the government invoked § 1226a, the parties filed supplemental memoranda addressing the legality and application of that section to Hassoun.

On December 13, 2019, the district court held that "8 C.F.R. § 241.14(d) is not a permissible reading of § 1231(a)(6)" and that it "does not provide procedural due process." *Hassoun v. Searls (Hassoun II)*, 427 F. Supp. 3d 357, 370, 372 (W.D.N.Y. 2019). Accordingly, the district court ruled that 8 C.F.R. § 241.14(d) is "a legal nullity that cannot authorize the ongoing, potentially indefinite detention of [Hassoun]." *Id.* at 372. On June 29, the district court issued another opinion holding that § 1226a also did not authorize Hassoun's continued detention, ordered his release, and denied the government's motion to stay Hassoun's release pending appeal.

7

*Hassoun IV*, 2020 WL 3496302, at *1. The government timely appealed the district court's decisions to this court and to the D.C. Circuit.

## DISCUSSION

In its motion, the government argues that Hassoun's release will "threaten the national security of the United States and the safety of the community." Gov't Mot. 4. This court has discretion to stay Hassoun's release, pending appeal, after considering "(1) whether [the government] has made a strong showing that [it] is likely to succeed on the merits; (2) whether [the government] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure [Hassoun] … ; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Having considered all four factors, we conclude that the government is entitled to a stay pending appeal.

## I

The government has made a strong showing that it is likely to succeed on the merits of its argument that the district court erred in holding that 8 C.F.R. § 241.14(d) is inconsistent with § 1231(a)(6) and does not provide adequate procedural due process. Hassoun argues that the government cannot make such a showing because, among other things, this court lacks jurisdiction to hear the government's appeal. *See Munaf v. Geren*, 553 U.S. 674, 691 (2008) (suggesting that jurisdictional issues can make success on the merits "more unlikely due to potential impediments to even reaching the merits") (emphasis omitted). "Because we have an obligation to assure ourselves of jurisdiction under Article III, we begin [there]." *Trump v. Hawaii*, 138 S. Ct. 2392, 2415-16 (2018).

**A**

In normal practice, "the court of appeals for the circuit in which the proceeding is held" has jurisdiction to review final orders addressing detention under 8 C.F.R. § 241.14(d) and § 1231(a)(6). 28 U.S.C. § 2253(a). So any appeal from Hassoun's first habeas petition, challenging his detention under § 1231(a)(6), would have been taken to this court. And, until the government certified Hassoun for continued detention under the Patriot Act, there was no question that any appeal from Hassoun's second habeas petition would have been taken to this court as well. But because the government invoked § 1226a, Hassoun claims that we lack jurisdiction to review the district court's ruling on 8 C.F.R. § 241.14(d).

The Patriot Act provides that "in habeas corpus proceedings described in paragraph (1)" of 8 U.S.C. § 1226a(b), "the final order shall be subject to review, on appeal, by the United States Court of Appeals for the District of Columbia Circuit." 8 U.S.C. § 1226a(b)(3); *see also id*. ("There shall be no right of appeal in such proceedings to any other circuit court of appeals."). Hassoun reads this provision to require the government to bring its appeal of the district court's 8 C.F.R. § 241.14(d) decision in the D.C. Circuit because the district court's "final order" addressed both 8 C.F.R. § 241.14(d) and 8 U.S.C. § 1226a. We disagree.

Section 1226a(b)(3) governs appeals from final orders "in habeas corpus proceedings described in" § 1226a(b)(1). Those proceedings are limited to "[j]udicial review of any action or decision *relating to this section*"—that is, to § 1226a. 8 U.S.C. § 1226a(b)(1) (emphasis added). The government is not seeking review of an action or decision relating to § 1226a in this court; it is challenging only the

district court's decision regarding 8 C.F.R. § 241.14(d). *See id.* § 1226a(c) ("The provisions of this section shall not be applicable to any other provision of this chapter."). Appeals challenging final decisions applying 8 C.F.R. § 241.14 are regularly heard by the regional circuit courts of appeals rather than by the D.C. Circuit, *see, e.g.*, *Hernandez-Carrera v. Carlson*, 547 F.3d 1237 (10th Cir. 2008); *Tran v. Mukasey*, 515 F.3d 478 (5th Cir. 2008); *Tuan Thai v. Ashcroft*, 366 F.3d 790 (9th Cir. 2004), and the text of § 1226a does not support the argument that proceedings challenging detention under 8 C.F.R. § 241.14(d) are habeas corpus proceedings described in § 1226a(b)(1).

Hassoun nevertheless argues that we should construe § 1226a to control the government's appeal of the 8 C.F.R. § 241.14(d) decision in order to avoid the bifurcation of appeals. For support, he points to *United States v. Hohri*, 482 U.S. 64, 69 n.3 (1987), which concluded that "bifurcation [was] inappropriate" in the context of the Federal Courts Improvement Act, 28 U.S.C. § 1295(a), which describes the exclusive jurisdiction of the U.S. Court of Appeals for the Federal Circuit. But § 1295(a) uses broader language than does § 1226a. Section 1295(a) gives the Federal Circuit jurisdiction over "an appeal from a final decision of a district court … if the jurisdiction of that court was based, in whole *or in part*" on certain enumerated grounds. 28 U.S.C. § 1295(a) (emphasis added). Section 1226a, by contrast, does not contain such expansive language.

Moreover, when the Federal Circuit "reviews a district court's judgment involving" issues outside the Federal Circuit's exclusive jurisdiction, it is "guided by the law of the regional circuit in which that district court sits." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1067 (Fed. Cir. 1998). This ensures uniformity in the application of law when a given issue is outside the Federal Circuit's

exclusive jurisdiction. By contrast, Hassoun's reading of § 1226a would require district courts to apply D.C. Circuit law, rather than the law of the regional circuit, when deciding issues unrelated to the Patriot Act. According to this reading, D.C. Circuit law applies because, under 8 U.S.C. § 1226a(b)(4), D.C. Circuit law must be "the rule of decision in habeas corpus proceedings described in paragraph (1)." If those "proceedings" included not only "[j]udicial review of any action or decision relating to [§ 1226a]" but also review of any actions or decisions related to other provisions that a detainee or the government invokes, then the statute would require the application of D.C. Circuit law to issues that are the province of the regional circuit. *Compare* 8 U.S.C. § 1226a(b)(3), *with id*. § 1226a(b)(4).

The district court did not see itself as bound by D.C. Circuit law when it ruled on the government's invocation of 8 C.F.R. § 241.14(d). *See Hassoun II*, 427 F. Supp. 3d at 363 n.2 ("[W]hile the Court applies the law of the Second Circuit in considering [Hassoun's] challenge to his detention under 8 C.F.R. § 241.14(d), it must apply the law of the D.C. Circuit in considering his challenge to his detention under § 1226a."); *Hassoun v. Searls (Hassoun III)*, No. 19-CV-370 (EAW), 2020 WL 1819670, at *5 n.2 (W.D.N.Y. Apr. 10, 2020) ("As the Court has previously explained, [Hassoun's] habeas claim under 28 U.S.C. § 2241 is governed by Second Circuit law, while his claim under 8 U.S.C. § 1226a(b) is governed by D.C. Circuit law."). And the parties themselves "primarily cited Second Circuit law in their respective briefs." *Hassoun III*, 2020 WL 1819670, at *5 n.2.

Mandating the application of D.C. Circuit law to disputes over 8 C.F.R. § 241.14 whenever the government has also invoked § 1226a would lead to absurd results. For example, two prisoners at the BFDF in neighboring cells could have their challenges to detention under

8 C.F.R. § 241.14 adjudicated under different law depending on whether they also challenged detention under, or the government also invoked, § 1226a. Moreover, if the government invoked § 1226a but later decided not to rely on that section to justify continued detention, an appeal under 8 C.F.R. § 241.14 would still go to the D.C. Circuit even though no issue related to § 1226a remained part of the case. And it would do so even if the ground invoked under 8 C.F.R. § 241.14 was unrelated to terrorism. *See, e.g.*, 8 C.F.R. § 241.14(b) (permitting the detention of aliens with a highly contagious disease). Most relevant here, if a case followed the trajectory of Hassoun's case—in which the government initially invoked 8 C.F.R. § 241.14(d) by itself and only later invoked § 1226a—the district court might begin its consideration of the habeas petition by applying the law of the regional circuit and only later discover that D.C. Circuit law must apply.

This approach would contravene the principle that "appellate jurisdiction should normally be known and remain unaffected" throughout "the entire process of filing, pretrial, trial, and post-trial motions" so as "[t]o impart certainty." *Atari, Inc. v. JS & A Grp., Inc.*, 747 F.2d 1422, 1432 (Fed. Cir. 1984) (en banc), *overruled in part on other grounds by Nobelpharma*, 141 F.3d at 1068 & n.5. The government did not invoke § 1226a until five months after Hassoun filed a habeas petition that challenged his detention under 8 C.F.R. § 241.14(d). It cannot be that the rule of decision governing Hassoun's challenge to his detention under 8 C.F.R. § 241.14(d) changed several months into the proceedings because of a unilateral decision made by one party.

Our conclusion that § 1226a permits bifurcated appeals is strengthened by the fact that Congress has provided for bifurcated appeals before, also in the context of national emergency and national

security powers. In 1970, Congress established the Temporary Emergency Court of Appeals (TECA), which had exclusive jurisdiction over "cases and controversies arising under" the Economic Stabilization Act of 1970 (ESA), and later, the Emergency Petroleum Allocation Act of 1973 (EPAA). *See Coastal States Mktg. v. New England Petroleum Corp.*, 604 F.2d 179, 182 (2d Cir. 1979). It was initially unclear whether "the exclusive appellate jurisdiction of the TECA [should] be … construed to include all cases involving any ESA issue … [or] only those issues involving any aspect of the ESA … while leaving to the court of appeals all other issues in the same case." *Id*. Although "[t]he statutory language offer[ed] … no firm answer," this court followed "a system of bifurcated appeals" and concluded that "[s]plitting the cases and giving the TECA only … 'issue' jurisdiction assure[d] uniformity of decision-making on all ESA issues." *Id*. at 183-84.

Like § 1226a, the ESA aimed "to funnel into one court all of the appeals arising out of the District Courts and thus gain consistency of decision." *Texas Am. Oil Corp. v. U.S. Dep't of Energy*, 44 F.3d 1557, 1562 (Fed. Cir. 1995). Accordingly, the "TECA … steadfastly implemented the jurisdictional policy and practice of deciding only the EPAA/ESA issue in a case, leaving to the regional circuit courts all other issues arising in the same transaction or joined to EPAA/ESA issues." *Id*. at 1563. Even after the U.S. Court of Appeals for the Federal Circuit assumed the TECA's responsibilities, it preserved the practice of exercising jurisdiction only over EPAA and ESA issues. *See Consol. Edison Co. of N.Y. v. Ashcroft*, 286 F.3d 600, 604 (D.C. Cir. 2002) ("A bifurcated appeals process, however, seems precisely what the Federal Circuit's issue-based approach contemplates."). In following that course in this case, therefore, we adhere to analogous precedent.

13

The text and structure of the Patriot Act support the conclusion that this court has jurisdiction to review the district court's 8 C.F.R. § 241.14(d) decision and therefore the government's motion to stay that ruling. Accordingly, we proceed to the merits.

**B**

The government has made a strong showing of a likelihood of success on its argument that the district court erred in holding that 8 C.F.R. § 241.14(d) is "not a permissible reading of § 1231(a)(6)." *Hassoun II*, 427 F. Supp. 3d at 372. The regulation was promulgated under the authority provided by § 1231(a)(6), *see Continued Detention of Aliens Subject to Final Orders of Removal*, 66 Fed. Reg. 56967-01 (Nov. 14, 2001), that certain classes of aliens "may be detained beyond the removal period," 8 U.S.C. § 1231(a)(6). To determine whether the government's interpretation of § 1231(a)(6) warrants deference, we must consider (1) "whether 'the statute is silent or ambiguous' as to the Attorney General's authority to detain certain categories of aliens beyond the ninety day removal period" and, if so, (2) "whether the agency's construction … represents a 'permissible reading of the statute.'" *Hernandez-Carrera*, 547 F.3d at 1244-45.

The first question is easily answered in the affirmative. "The Supreme Court has twice explicitly found [§ 1231(a)(6)] to be ambiguous as to whether and under what circumstances Congress authorized the Attorney General to detain aliens indefinitely." *Hernandez-Carrera*, 547 F.3d at 1245. The latter question requires a closer inspection.

To determine whether the government has made a strong showing that its construction of § 1231(a)(6) is permissible, we consider two issues. First, we decide whether 8 C.F.R. § 241.14(d) is

14

inconsistent with existing Supreme Court precedent that identifies constitutional concerns in the application of § 1231(a)(6). Second, we decide whether the regulation raises other serious constitutional doubts or is otherwise an unreasonable interpretation of the statute.

**1**

Hassoun contends that the Supreme Court's interpretation of § 1231(a)(6) in *Zadvydas* and *Clark v. Martinez*, 543 U.S. 371 (2005), forecloses the authority the Attorney General claims under 8 C.F.R. § 241.14(d). We disagree.

In *Zadvydas*, the Supreme Court construed § 1231(a)(6) "to contain an implicit 'reasonable time' limitation" with respect to habeas petitioners generally, such that "if removal is not reasonably foreseeable" after six months, "continued detention [is] … no longer authorized by statute." 533 U.S. at 682, 699-700. In so holding, the Court expressly avoided "consider[ing] terrorism or other special circumstances where special arguments might be made for forms of preventive detention and for heightened deference to the judgments of the political branches with respect to matters of national security." *Id*. at 696. Moreover, the Court did not "interpret section 1231(a)(6) for all time and all purposes." *Tuan Thai v. Ashcroft*, 389 F.3d 967, 969-70 (9th Cir. 2004) (Kozinski, J., dissenting from denial of rehearing en banc). "Rather, the Court merely … declined to defer to an agency interpretation that raised serious constitutional doubts, and was therefore an unreasonable construction of Congress' intent." *Hernandez-Carrera*, 547 F.3d at 1249.

Consequently, "the Court's method of narrowing" § 1231(a)(6) in *Zadvydas*, which it reaffirmed in *Clark*, "is not the only permissible one." *Tuan Thai*, 389 F.3d at 971 (Kozinski, J., dissenting from denial

of rehearing en banc). "[E]ven after a court has construed a statute to avoid constitutional doubts, an agency remains free to interpret the same statute in a different manner so long as its subsequent interpretation is reasonable and avoids serious constitutional questions." *Hernandez-Carrera*, 547 F.3d at 1251; *see Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").

In promulgating 8 C.F.R. § 241.14(d), the Attorney General avoided the serious constitutional questions identified in *Zadvydas* by focusing narrowly on those "specially dangerous individuals" implicated in "terrorism or other special circumstances" that the Supreme Court said were not subject to its holding or the limiting construction the Court imposed on the statute. *Zadvydas*, 533 U.S. at 691, 696. The regulation permits continued detention only for aliens whose "release presents a significant threat to the national security or a significant risk of terrorism" and for whom "[n]o conditions of release can reasonably be expected to avoid the threat to the national security or the risk of terrorism." 8 C.F.R. § 241.14(d). In limiting the regulation's scope to this narrow class, the Attorney General ensured that it would apply "only to terrorists and criminals" and not "to [the] ordinary visa violators" for whom the *Zadvydas* Court concluded Congress did not authorize continued detention. 533 U.S. at 697; *see id*. at 691 (reiterating that Congress would not have authorized continued detention "broadly [for] aliens ordered removed for many and various reasons, including tourist visa violations" rather than for

16

"a small segment of particularly dangerous individuals" such as "suspected terrorists").

Indeed, this class of aliens is so narrow that "this is only the second time 8 C.F.R. § 241.14(d) has been invoked since its promulgation in 2001." *Hassoun II*, 427 F. Supp. 3d at 366 n.5. As *Zadvydas* recognized, "government detention violates [the Fifth Amendment's Due Process] Clause *unless* the detention is ordered … in certain special and 'narrow' nonpunitive 'circumstances.'" 533 U.S. at 690 (emphasis added). By limiting the scope of 8 C.F.R. § 241.14(d), the government ensured that it would apply only in such circumstances.

The district court thought that *Zadvydas*—and the Supreme Court's adherence to its limiting construction in *Clark*—did not "[leave] open the possibility for a more narrowly tailored regulation such as the one at issue here." *Hassoun II*, 427 F. Supp. 3d at 367-68. We see no inconsistency between the decisions in *Zadvydas* and *Clark* and the regulation at issue here. The Supreme Court in *Clark* applied the same construction to inadmissible aliens that it applied to admissible aliens in *Zadvydas* so as not to "give the same statutory text different meanings in different cases." *Clark*, 543 U.S. at 386. Yet the *Zadvydas* construction always excluded "terrorism or other special circumstances where special arguments might be made for forms of preventive detention." *Zadvydas*, 533 U.S. at 696. So there would be no inconsistency for a court to recognize that, when faced with the special circumstances identified in *Zadvydas*, the Court's construction allows for a different outcome. Although the Court made other remarks that could be construed to support the district court's reading of § 1231(a)(6), *see Clark*, 543 U.S. at 379 n.4, 386 n.8, the Court never suggested that § 1231(a)(6) *unambiguously* precludes the

17

interpretation the government now urges, *see Hernandez-Carrera*, 547 F.3d at 1249.

While judges generally adhere to the same interpretation across cases, the government was entitled to resolve statutory ambiguities differently than the Court had done previously. *See Brand X*, 545 U.S. at 980.

**2**

Having determined that prior precedent does not categorically prohibit 8 C.F.R. § 241.14(d), we must decide whether the regulation is a "reasonable" interpretation of § 1231(a)(6). *Brand X*, 545 U.S. at 980 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44, 843 n.11 (1984)). The statute provides that:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6). The regulation does not apply to aliens beyond those who have already been ordered removed and meet the predicate requirements. The question is whether this statutory language may reasonably be read to authorize the continued detention of specially dangerous individuals beyond the removal period upon a showing that their release would threaten national security or pose a risk of terrorism. We conclude that it does. Not only does that reading fit naturally with the statute's express language, but the government's interpretations of § 1231(a)(6) are also entitled to

18

"heightened deference" to the extent those interpretations address "terrorism or other … matters of national security." *Tuan Thai*, 366 F.3d at 796.

The only remaining question, then, is whether 8 C.F.R. § 241.14(d) implicates serious constitutional concerns beyond those raised in *Zadvydas* and *Clark*. The district court concluded that it raises such concerns because the regulation fails to provide for review by a neutral decisionmaker and to place the burden of proof by clear and convincing evidence on the government. *Hassoun II*, 427 F. Supp. 3d at 369-72. We disagree and conclude that the government has made a strong showing of a likelihood of success on the merits of its argument that the regulation provides adequate procedural due process.

"[T]he nature of [procedural due process] protection[s] may vary depending upon status and circumstance." *Zadvydas*, 533 U.S. at 694; *see Hernandez-Carrera*, 547 F.3d at 1254 ("[I]t is not at all clear that removable aliens benefit from precisely the same advantages of due process as do citizens or lawful permanent resident aliens."). Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), we consider three factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

While Hassoun faces the potential of "indefinite detention," *Zadvydas*, 533 U.S. at 690, the government has a compelling interest in protecting national security, *see Haig v. Agee*, 453 U.S. 280, 307 (1981)

19

("[N]o governmental interest is more compelling than the security of the Nation."). The regulatory framework features procedural protections to minimize Hassoun's risk of being erroneously deprived of liberty. First, the regulation requires the government to provide Hassoun with notice of its intent to detain him under the regulation, a description of the factual basis for the detention, and a reasonable opportunity to examine the evidence and present information on his own behalf. 8 C.F.R. § 241.14(d)(2). Second, it provides Hassoun the opportunity to participate in an interview with an immigration officer and to produce a sworn statement. *Id*. § 241.14(d)(3). Third, as he did in this case, Hassoun may challenge his detention by seeking a writ of habeas corpus in federal court.

The district court held that these procedures are inadequate because the procedures "[do] not provide for any review by a neutral decisionmaker." *Hassoun II*, 427 F. Supp. 3d at 370. Yet the availability of habeas corpus is "sufficient to satisfy the requirements of the Due Process Clause." *Hernandez-Carrera*, 547 F.3d at 1255; *see Fay v. Noia*, 372 U.S. 391, 402 (1963) ("[H]abeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office."). The regulation is unlikely to be held unconstitutional for lack of a neutral decisionmaker when detainees may seek review of its application in the federal courts.[2]

---

[2] The district court expressed concern that it could not "qualify as the necessary neutral decisionmaker" if, as the government suggested below, a court was barred under 8 U.S.C. § 1252(a)(2)(B)(ii) from reviewing the DHS Secretary's factual determinations related to certification under 8 C.F.R. § 241.14(d). *See Hassoun II*, 427 F. Supp. 3d at 370 n.8. We do not find this concern decisive here. First, it appears from the record that the district court

With respect to the standard of proof, the district court held that the Due Process Clause requires a clear-and-convincing evidentiary standard because, in *Addington v. Texas*, 441 U.S. 418, 427 (1979), the Supreme Court held that "due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence" in the context of civil commitment proceedings. There is substantial reason to doubt that *Addington* is the most analogous case for determining the proper evidentiary burden here. In that case, the Supreme Court applied the enhanced burden to avoid "the possible risk that a factfinder might decide to commit an individual based solely on a few isolated instances of unusual conduct." *Id*.

---

was able to resolve Hassoun's challenge to his detention under 8 C.F.R. § 241.14(d) without facing any obstacle to fully considering his arguments. For that reason, the district court did not resolve whether § 1252 applies to the claims in this case. *See Hassoun II*, 427 F. Supp. 3d at 370 n.8. Thus, even if § 1252 applies to habeas challenges and would affect a district court's review in a hypothetical case, that issue is not presented in this appeal. Second, § 1252's jurisdictional bar applies only where "discretion is conferred … by statute" rather than "by regulation." *Kucana v. Holder*, 558 U.S. 233, 252 (2010). Although the government told the district court that § 1231(a)(6) provides discretionary authority to detain Hassoun, the Supreme Court held when interpreting the statute in *Zadvydas* that "the extent of that authority is not a matter of discretion." 533 U.S. at 688. Accordingly, when federal officials make determinations—under certification procedures created by regulation—that a detainee falls within the class of "specially dangerous individuals" that may be further detained, it is not clear that those officials are exercising an authority *the statute* makes discretionary. Third, even if § 1252 limited review of the substance of the Secretary's certification decisions, that alone might not violate the Due Process Clause. *See Sol v. INS*, 274 F.3d 648, 651 (2d Cir. 2001) (reasoning that a "fact-intensive review is vastly different from what the habeas statute plainly provides: review for statutory or constitutional errors"). The district court did not fully address these issues.

21

Subsequently, in *Jones v. United States*, 463 U.S. 354, 367-68 (1983), the Supreme Court endorsed the use of the preponderance-of-the-evidence standard for the indefinite confinement of an individual who was acquitted of a criminal offense by reason of insanity. Although there was a "diminished concern as to the risk of error" in part because "the acquittee himself advance[d] insanity as a defense[,] … the proof that he committed a criminal act" also "eliminate[d] the risk that he [was] being committed for mere 'idiosyncratic behavior'" because "[a] criminal act by definition is not 'within a range of conduct that is generally acceptable.'" *Id*. at 367 (emphasis omitted). Like the requirement of a criminal act in *Jones*, 8 C.F.R. § 241.14(d)'s requirement of a "significant threat to the national security or a significant risk of terrorism" operates to reduce the risk of erroneous deprivation based on mere unusual conduct.

The "'preponderance of evidence' standard is the traditional standard in civil and administrative proceedings." *Sea Island Broad. Corp. of S.C. v. FCC*, 627 F.2d 240, 243 (D.C. Cir. 1980). In *Hamdi v. Rumsfeld*, 542 U.S. 507, 534 (2004), which dealt with the potentially indefinite detention of American citizens on American soil, a plurality of the Supreme Court held that "the Constitution would not be offended by a presumption in favor of the Government's evidence, so long as that presumption remained a rebuttable one and fair opportunity for rebuttal were provided." For that reason, "once the Government puts forth credible evidence that the habeas petitioner meets the enemy-combatant criteria, the onus could shift to the petitioner to rebut that evidence with more persuasive evidence that he falls outside the criteria." *Id*. Applying *Hamdi*, the D.C. Circuit has repeatedly upheld the application of the preponderance-of-the-evidence standard in the context of wartime detention. *See Ali v.*

22

*Trump*, 959 F.3d 364, 372 (D.C. Cir. 2020); *Awad v. Obama*, 608 F.3d 1, 11 (D.C. Cir. 2010) ("A preponderance of the evidence standard satisfies constitutional requirements in considering a habeas petition from a detainee held pursuant to the AUMF.").

Finally, the district court did not consider whether a clear-and-convincing evidence standard was required in light of the "heightened deference to the judgments of the political branches with respect to matters of national security." *Zadvydas*, 533 U.S. at 696. Those matters were not at issue in *Addington* but figure prominently here. For these reasons, there is substantial reason to doubt the district court's conclusion that the regulation is invalid because it does not explicitly incorporate the clear-and-convincing evidence standard, and the government is correspondingly likely to prevail.

## II

We agree with the government that considerations of irreparable harm and the equities favor a stay of Hassoun's release pending appeal. "Where … special and narrow circumstances are present," such as the risk of terrorism, "the government's interest in preventing harm outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez-Carrera*, 547 F.3d at 1251-52 (internal quotation marks omitted).

## A

Even though the district court imposed conditions of supervised release intended to ameliorate the harm from Hassoun's release, *Hassoun IV*, 2020 WL 3496302, at *5-6, the government asserts that Hassoun's release would still "profoundly burden DHS, the FBI, ICE, and other law enforcement agencies tasked with monitoring

Hassoun" and that "'it is not possible to fully mitigate the threat posed by Hassoun's release.'" Gov't Mot. 4 (alteration omitted).

National security concerns "arise in connection with efforts to confront evolving threats in an area where information can be difficult to obtain and the impact of certain conduct difficult to assess." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010). Conclusions about that information therefore "must often be based on informed judgment rather than concrete evidence, and that reality affects what we may reasonably insist on from the Government." *Id*. at 34-35. Here, the Acting ICE Director, the Acting Secretary of DHS, and the FBI Director each has concluded that Hassoun's release would pose a threat to national security. Even where "the dangerousness of an alien pending removal still may not justify indefinite detention … it may be considered when determining whether immediate release is the appropriate remedy." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 104 (W.D.N.Y. 2019) (citing *Zadvydas*, 533 U.S. at 685, and *Hilton v. Braunskill*, 481 U.S. 770, 779 (1987)). Accordingly, we conclude that the government has demonstrated that it would suffer an irreparable injury from Hassoun's release absent a stay.

**B**

"Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Nken*, 556 U.S. at 435. "[T]he Government's interest in combating terrorism is an urgent objective of the highest order." *Humanitarian Law Project*, 561 U.S. at 28. This interest "can, in appropriate circumstances, outweigh an individual's liberty interest." *United States v. Salerno*, 481 U.S. 739, 748 (1987). This

is one such circumstance. As an initial matter, an individual such as Hassoun who concededly has no legal right to be in the United States following his removal order—and is not covered by the Supreme Court's holding in *Zadvydas*—does not have a right to be released into the United States. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) ("Even once inside the United States, aliens do not have an absolute right to remain here."); *Zadvydas*, 533 U.S. at 703 (Scalia, J., dissenting).

Although "[t]he interest of the habeas petitioner in release pending appeal [is] always substantial," the court must consider whether "there is a risk that the prisoner will pose a danger to the public if released." *Hilton*, 481 U.S. at 777. Hassoun is a convicted terrorist who has been ordered removed from the United States, and our court has noted that "even terrorists with no prior criminal behavior are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation." *United States v. Meskini*, 319 F.3d 88, 92 (2d Cir. 2003). Although Hassoun has a strong interest in his release, the balance of the equities favors granting the government's motion for a stay.

## CONCLUSION

Because the government made a strong showing that it was likely to succeed on the merits and that it would suffer irreparable harm absent a stay, we **GRANTED** the government's motion for a stay pending appeal by an order issued July 16, 2020.

In the interest of judicial economy, any future proceedings on appeal shall be assigned to this panel.